Our first case is 523-1239. I'm going to show the pronunciation. Erlenmeyer v. Holzhauer. Arguing for the appellant is Mr. Dury. Yes, sir. And for the appellee is Mr. Shoemaker. Yes, sir. All right, you both ready to proceed? All right, you may do so. Thank you. May it please the Court, this is a consumer fraud case. There was a bench trial. At the close of the plaintiff's evidence, the trial court granted a judgment as a matter of law, pursuant to an oral motion under 735 ILCS 5-2-1110, which permits such. Although it was titled a motion for directed verdict, it's really a motion for judgment as a matter of law. The trial court ruled at the close of the plaintiff's evidence that there was no evidence provided from which he could calculate the amount of damages, even if the plaintiff was entitled to damages. And then he stated, quote, so I think that gets rid of your case right there, close quote. The trial court did not rule that the plaintiff failed to prove liability or failed to prove the fact that plaintiff sustained some damages, and the evidence clearly established that there was some damages, but instead ruled as a matter of law that if there was no evidence from which he could calculate the amount of damages, then the plaintiff failed to make a prima facie case, which makes the standard of review de novo, as stated in the Evans v. Burney N's case cited in our brief. The basic facts are comparing the 2012 Ford Escape as represented and its value with the same vehicle as it actually existed. As represented at the time of the sale on December 31, 2019, by the defendant, it was a one-owner vehicle owned by a female doctor, well-maintained. There was a clean car fax and no prior accidents. But as it actually existed, the 2012 Ford Escape had four prior owners, one of which was a car rental company and had two prior collisions and had no clean car fax. So just from those facts alone, a fact finder could certainly infer that there are some damages as existed as is would certainly be less than the value as represented. Do you agree that the actual purchase price was $8,500 and not $14,603? No, I don't. Is that deducting the financing charges? Yes. The purchase price, as I understood, was $8,500. They added on some other stuff, which made it like a maintenance agreement. I don't know what all they added, but they added several things and made it $14,600. Do you agree the original purchase price was actually $8,500? I don't recall that fact, Your Honor. I can't dispute it, but I don't recall. I didn't really dig into what the difference between the financing price. The evidence was that from the plaintiff, he was permitted to testify that the fair market value of the car as represented was $13,000. He was permitted to testify to that. He was also permitted to testify that the fair market value of the vehicle as is was less than $13,000. When he was not allowed to testify to an offer of proof was made on that, he also actually was allowed to testify that the fair market value of the vehicle as is at the time of the sale was $2,000. But that testimony was then stricken with a series of objections back and forth, and initially the trial court was going to let him testify to the as is fair market value, then changed his mind and an offer of proof was made that that's what he would testify to have permitted. The trial court never actually specifically denied the offer of proof, but by implication the judgment that he entered at the close of the plaintiff's evidence would indicate that he had denied the offer of proof. Was it part of the trial court's issue that nobody could testify what the actual value of the car was at the time of sale? They were trying to testify what the value of the car was at the time of the plaintiff. No, Your Honor. The plaintiff was permitted to testify that the fair market value at the time of the sale was $13,000. He was permitted to testify to that. I thought you said that was as presented but not as actual. As represented. Right. As represented. So he was allowed to give his opinion. The trial court determined he was competent to give his opinion of the fair market value at the time of the sale of $13,000. The trial court ruled he also was competent to testify that the as-is fair market value at the time of the sale was less than $13,000. But it was less than the purchase price of $8,500. The evidence was that the fair market value, and I don't recall the $8,500, but the evidence surely was the fair market value was $13,000 at the time as represented at the time of the sale. And that the fair market value as-is was less than that at the time of the sale. There's no dispute that was the evidence. And in addition, the car fax that was issued in June of 2021, which would be a couple years after the sale, which was admitted without objection, provided that the trade-in value for the car at that time was $4,810. Which was 18 months and 6,025 miles after the date of purchase. But counsel, how would the judge be able to value the car at the time of the sale based on the car fax that was 18 months older, essentially? Or is that a different date? The car fax establishes the trade-in value in June of 2021 and was based on the as-is condition with the four prior owners, the prior rental car owner, and the fact that it had two prior accidents which had not been disclosed. So that was admitted without dispute. So... But you agree that the timing of that was different than the timing of the sale, correct? Definitely. And the point we make is that this is 6,025 miles later. So that's actually not that much in terms of mileage. It's 18 months later. So the trade-in value of that time was $4,810, substantially less than the evidence of the fair market value at the time of the sale, indicating... You're comparing a value that's 18 months later and mileage later, and you're comparing trade-in value with fair market value. Well, Your Honor, if I could start, I would say the first point is it's error to grant the motion for judgment on the grounds that there was no evidence from which, in the trial court's mind, there was no evidence from which the trial court could calculate the amount of damages. Because the law is if there's... If you establish the fact of damages, then you can determine the amount of damages by reasonable inference. You don't have to have exact evidence of the exact amount of the difference in fair market value amount of damages in order to infer the amount of the damages. And our point here is the trial court could have inferred the amount of damages by the CARFAX 18 months and 6,000 miles later versus the evidence that was admitted of the fair market value as represented at the time of the sale. And in addition to that, we also raise an issue, and this would be probably under abuse of discretion standard, that the trial court erred by not permitting the plaintiff to testify that the fair market value of the vehicle at the time of sale, as is, was $2,000. And the trial court's rationale was that the plaintiff was competent to give his opinion of the fair market value of the vehicle at the time of the sale as represented, $13,000, and was competent to testify that the fair market value at the time of the sale was less than $13,000 when you consider the vehicle as is. So the trial court ruled that the plaintiff was competent to testify to those two facts, but then ruled that the plaintiff was not competent to testify to his opinion that the as is value at the time of the sale was $2,000. And there's just no rational connection there. Either the plaintiff was competent to give his opinion of the values as represented and the value was less as is, in which case he would also be competent to testify to his opinion of the actual as is value of $2,000. There's no rational connection. Either he was competent to testify to the values at the time of the sale or he wasn't. And the court ruled that he was competent to give his opinion since he's an owner and was familiar with the vehicle, which the law says you don't have to have expert testimony. So since the trial court ruled he was competent to testify to the fair market value at the time of the sale as represented and as is, that it was less than that amount, he surely would also be competent to testify to his opinion of the actual value at the time of the sale as is, which is $2,000, and from which the trial court could certainly calculate the amount of damages. And the standard, of course, on the admission of evidence is abuse of discretion, which is, oh, no reasonable person would take the view adopted by the circuit court. And there's just no logic to say he was competent to give his opinion of those two values at the time of the sale and not also competent to give his opinion of the as is value of $2,000. There's just no rationale. But wouldn't the court be skeptical given his lack of expertise in professional car buying when there's a car fax 18 months later that shows a trade-in value of $4,800 and he's trying to claim it's $2,000 at the time of sale, fair market value? Wouldn't that put the court on a limb as to maybe not? We never got to the point of the trial court weighing the evidence. He permitted the testimony. So once he permits the testimony, I don't think you can say on appeal that, well, really, he was doubtful as to whether he would admit to testimony. He either admitted it or he didn't admit it and he admitted it. So we never got to the point like in most bench trials where the judge was weighing the evidence and deciding issues of fact. We only got to the point where the judge made the ruling that a prima facie case was not made because the judge could not calculate the amount of damages. And I submit to the court that's not legally sound. That's not legally correct. Because the judge even said... In light of that statement, counsel, how do you get around the Burkhart case? Because doesn't the Burkhart case say that the damages have to be calculable? No, Your Honor. In the Burkhart case, and we distinguish it in our briefs, summary judgment was granted when a car dealer mistakenly advertised a $36,000 car for $19,000. The plaintiff didn't buy the car. There were no damages. That's what the court ruled in that case. And the other case of defense relies on Morris v. Harley, Circle, and Camper. The plaintiff co-signed a loan and then complained about it, but her complaint was she suffered emotional damages. She suffered no economic damages. And that complaint was dismissed. Those two cases are completely inopposite to the situation here. So we... I submit to the court that the trial court erred by dismissing or by granting a motion for judgment at the close of the plaintiff's evidence on the grounds that he was unable to calculate the amount of damages, even if there were damages. He never ruled. There was no evidence of damages. And as I indicated before, there's clearly evidence that the fair market value as is was less than the fair market value as represented. And the law provides that if you have evidence of damages, certain evidence that certainly damages occurred, then the measure of damages allows the court to make reasonable inferences from the evidence as aside from an exact economic calculation. But even here, an exact economic calculation could have been made by the judge. He could have concluded that the difference was $13,000 minus $4,810. Or he could have concluded, well, some of that was wear and tear, so I'm not going to give him the $4,810 as the lesser value. I'll give him 80 percent of it, of the difference. He certainly could have done that. And the law would have permitted him to do that. So he was wrong in granting judgment at the close of the plaintiff's evidence on the grounds that there was no evidence, allegedly, from which he could calculate the amount of the damages. And he certainly never decided that there were no damages. And I see I have a red light. Questions, Justice Lewy? Other questions, Justice Schill? All right, thank you. We've given that opportunity for a vote at the moment. Mr. Schimek, are you ready to proceed? Good morning, Your Honor. Good morning. Now, in order to understand the facts of this case, I think we need to go a little deeper into the recitation of what occurred here. Earl O'Meara arrives at the car dealership at roughly 5 o'clock on December 31, 2019. He is shown a car by a salesperson, which both of them were talking about as a 2011 vehicle. He tests for the vehicle. He purchased the vehicle, as the court noted, for $8,500. Nobody has testified that the fair market value of this poor car is $14,000. The exhibit that is relevant to that is Defendant's Exhibit 1, in which it clearly says that the contract between the parties was $8,500. That's the purchase price of the car. Plaintiff continually argues that the car is worth less than $14,000. Well, of course it is. We sold it for $8,500. We're not the business. The full salary is not the business of selling cars for less than they're worth. So this illusory number of $14,000, you know, Plaintiff's counsel cannot possibly not understand the contract. That's what he sued under. So they agree to that price. They go back to the closing office, and it is discovered before his client signs in the documents that the car, it's either a different car. We can't tell. Nobody knows. It's either a different car, it's 2012, or they were mistaken with one car, and it's still 2012. And they tell him, before he purchased the vehicle, and Plaintiff admitted this at trial, that we're wrong. It's a 2012 car, not a 2011. Do you still want to proceed? Under contract law, there is a new contract being formed at that time. Plaintiff says, yes, I do want to proceed with that purchase. And the whole story says, okay, we're going to do this. We'll offer you a 2012 for the same price. Is that acceptable? Yes. He proceeds. Every single paper in the purchase agreements, which is E2 through E5, show that this is a 2012 vehicle. The plaintiff admitted that when he came in and asked about the 2011, he asked to see a Carfax. And they showed him the Carfax for the 2011. Once he was told it was a 2012, he did not ask for a Carfax. Plaintiff admitted at trial that a reasonable consumer would have asked for that 2012 Carfax. He did not. He admits he did not. He knew that he was purchasing a 2012 and that it would have a different history than the 2011 Carfax that he viewed. He admitted ultimately at trial that Holshorn made no misrepresentations whatsoever as to the 2012 vehicle, which he purchased. He did not purchase a 2011 vehicle. He purchased a 2012 vehicle. Plaintiff then waits 18 months, and his spouse has a conversation with a car dealership in Cape and speaks to a salesman there about purchasing a car that they have advertised. The car salesman says, well, I don't know what the value of your trade is. So she gives him some information, and he replies to her that I think the car might be worth taxing. He hasn't seen the car. He hasn't ridden in the car. He hasn't driven the car. And he says, I think the car is worth this much on a trade-in value. They don't go trade it in. That's the person who they disclose as an expert, Mr. Brown. Counsel, let me interrupt you. What about the proposition, though, that the court could have made an inference as to value based on the different information that was before the court? Just because the court allowed the plaintiff to testify as to what he thought the value was over objection, doesn't mean the court has to accept that as evidence. There was no evidence showing that Mr. Erlenmeyer had the requisite expertise, and that's why the court ultimately decided that he could not testify forensically as to the value of the car three years ago. This trial occurred three years after the purchase, and Mr. Erlenmeyer, who was not disclosed as a Rule 213 expert, only disclosed as a lay witness, could not testify what the value of the car was three years ago. On the day he purchased that vehicle, he had no knowledge about that car. He didn't, quote, own the vehicle like the law says. When you own something, you can testify as to what you think the reasonable value of it is. He didn't own the car on December 31, 2019, until he closed the deal. How could he possibly place a valuation on it? What about the car fax? Could that be used for the valuation then? Once again, the court immediately said, look, you've given me a car fax that is 18 months post-purchase. You've made no foundation for what they call a trading value versus a fair market value. There's nobody who's testified in this case at all. The car faxes set the price for vehicles. They don't. If it was that simple, you could go online and buy it for that amount. But they don't. There's just a number that they put out there for a trading value based upon market surveys. Trading value is not fair market value. You're buying something for me, and in exchange for you making that first purchase, I will take your car and I will pay you potentially the trading value of X. Is that fair market value? Depends how badly I want your car. Depends upon market conditions at the time. As we all know, during COVID, used car sales went up. Car values all went up. So they all fluctuate every day, every week. So for plaintiff to be allowed to testify, oh, I think the car is worth X, what he did, and he admitted that he did this during his testimony, is he used the valuation that Brown put on it, and then because of some minor problems with the vehicle, he reduced that another $500. So it's Brown telling the wife, who did not testify, and then the wife telling him what Brown said, and that's what he used for the basis of his, quote, opinion. The court ruled that that is not a justifiable basis or foundation for the evidence here. That's how you get around the fact that he testified that it was worth X. He had no basis for his opinion. He didn't state that there was a problem with X and it would cost Y to fix it. There was a problem with Z and it cost V to fix it. There's no valuation done by him. It's just pure speculation and guess. So how did we get here, though? Okay, so we got a case management order in. Plaintiff disclosed Brown as an expert on April 4th, 2023. We requested Brown's deposition that very same day, April 4th, 2023. We never got a date. We never got intended. We filed a motion for summary judgment on June 23rd, 2023, and one of the points we raised in our motion for summary judgment was, you have failed to produce your expert. You have nobody who can testify as to valuation. Plaintiff did not really file a response to our June 23rd motion for summary judgment. On July 11th, they filed a motion for additional time, which is the first time they disclosed to anyone that Brown had moved to Colorado and was not available any longer. Okay? The court graciously allowed plaintiff until August 15th, 2023, to name a damages expert. Plaintiff realized they needed a valuation damages expert in order to make their case, so the court said, okay, I'm going to give you additional time. Now, keep in mind, this case was set up for trial November 13th, and the court still allowed them to do this over objection. Plaintiff failed to name an expert by April 15th, 2023. 44 days late with the court deadline, the second court deadline to name an expert, plaintiff filed a motion for leave to name a damages expert. On October 5th, plaintiff actually disclosed that expert's opinion in this case. On October 16th, a court hearing was held, and an argument was made on string court rules that bar in the late disclosures, especially within 60 days of trial. Okay? The court denied plaintiff's motion to disclose blue banks. That was the second expert's opinions. Plaintiff knew he had to have one, and it was denied. Plaintiff, in his brief, states that he made a motion to continue the trial. There was no such motion ever made in this case. The court reaffirmed on October 16th the trial would be November 13th, and it was held that day. So plaintiff only had, at that point, two ways to produce an expert on valuation. Number one, he could attempt to have his client testify, or two, he could call the defendants' people, who we have disclosed as potential witnesses in this matter. With regard to plaintiff, plaintiff was not disclosed as a 2013 expert on valuation. Plaintiff did not disclose any basis for his opinions on valuation. He had no relevant experience in vehicle valuation. Plaintiff claimed to understand that he had bought and sold approximately 20 vehicles during his life, and that he looked on the Internet and found valuations, but he didn't testify about valuations of this specific type of car or the mileage or the damage or anything else. There are cases out there where a plaintiff was allowed to testify, the Mercedes Benz. It's either Kim or Rose versus Mercedes Benz. But the plaintiff testifying in this case, I looked up this specific make and this specific model, and I looked up what the value of it was when I bought it. Now, plaintiff runs into problems with, in that case, in that Mercedes Benz case, ultimately the court in both Kim and Rose versus Mercedes Benz, the court said, you may be able to testify what the value of the vehicle was on the day you purchased it, but you're not an expert in the valuation of what the vehicle is worth in its actual condition. The same problem we have here. And in both of those cases, the court rejected the plaintiff being able to testify for lack of expertise. That's what occurred here. Plaintiff failed to establish a foundation for his valuation or his expertise. The court listened to him over objection on what he thought the fair market value was, this made-up $14,000 number. And then the court listened to him over objection that the car was worth $2,000 based on Brown's testimony and what his wife told him and what he thought was worth. Okay? That doesn't mean the court has to accept that and ultimately agree that that is appropriate. The court has the right to control expert witnesses who testify in their courtrooms and decide whether their testimony is sufficient basis for damages in this matter. In this case, the court clearly did not accept it and ultimately barred Mr. Olenmeier's testimony as to what the value of the car was as it was conditioned. Okay? It gets a little confusing, and I admit that. But there's no way that he could go back in time and value this vehicle. You know? Plaintiff recognized this by trying to name Wilbanks. If Plaintiff didn't need an expert, could have relied on Olenmeier's testimony, then why did he try to disclose Wilbanks' label? He knew there was a hole in this case because of our motion for summary judgment, and he tried to plug it, and it didn't work. Then there's the testimony offered by Holzhauer's people. Plaintiff called Holzhauer's people. None of whom testified either that a car theft was a reliable valuation of fair market value or used by them in actually determining fair market value. Baldwin was our expert on valuation, but he was never disclosed to say the car was worth X. He was disclosed to say this is how car valuation works. And he said there is no difference in the fair market value of a vehicle if it had one previous owner and no accidents or four prior owners and two accidents. The important factors are how it looks, how it drives, and is everything on it all right. Nobody could possibly say that the car is worth X because it's been involved in a fender bender. You can't tell from a car theft whether it's been involved in a fender bender or a series X. So how could you possibly use the fact that Carfax says it's been in an accident? And who cares about the number of owners? One car can have one owner and be a fleet vehicle, be a Hertz or an Enterprise vehicle, and have just one registered owner. Or it could have four owners who are very careful and take care of the car. Carfax has only provided you with a history to the extent that it does. And I want the court to keep in mind, Paul Colshar would have provided a Carfax for this car if Erlinger would have asked for it. That's what the testimony showed. He did not ask for it. There was no specific – no valuation of a specific vehicle was ever provided by Miller, Baldwin, or Hasselhorst and Nisman. Matter of fact, the claim presented no evidence of damages that would have actually allowed the court to come up with an estimated damage, because of the made-up figures that were offered to the court. Counsel, I mean, is it safe to say that the Carfax is really a tool for the consumer to look at and see if the car has had an accident, how many owners, basically to familiarize themselves with that particular vehicle to make a decision whether, like you just said, ooh, it's a fleet vehicle, I don't know about that. Or it's got four owners, I don't know about that. It's really a tool when you go to buy a vehicle more than, you know, this is the end-all be-all about this vehicle. That's absolutely correct, and that's what the Colshar people testified to, that they don't rely upon it permanently, but they make it available to consumers if they ask for it so they can take a decision as to whether it's something they're interested in knowing. We have no idea of knowing what person A who walks into the dealership is going to think is important with regard to a car valuation. They're the only person who knows that. If they ask the questions, we'll answer, and we did in this case. There was no misrepresentation of Mr. Irlenmeier as to this vehicle. Any other questions, Your Honor? Thank you for your time this morning. Rebuttal? Yes, Your Honor. The trial court did not rule on the merits. The trial court ruled that the evidence did not establish a prime official case because in the view of the trial court, there was no evidence from which the trial court could calculate damages, even if there were damages. And there was ample evidence that the car as represented was much more valuable than the car as it actually existed. It was represented to be a one-owner car, a female doctor, well-maintained, clean Carfax. As it existed, there were four prior owners, including a rental car, the company, and two prior accidents. With respect to the prior accidents, the Carfax, the Carfax was admitted into evidence. It wasn't admitted into evidence conditionally. It was admitted into evidence. And the Carfax showed that in the first prior accident, the car was damaged to the point that it had to be towed, and that in the second accident, the car was damaged in, I think it was the left front. Any car buyer would want to know that, in fact, the witnesses from the defendant that I called as adverse witnesses specifically said they rely on Carfax all the time to determine the value of the car. Well, this is a case where the car as represented does not, as the car as it actually existed, and it clearly would be worth less money as existed then as represented. But the primary issue is, did the trial court err, as a matter of law, in granting the motion for judgment to close the plaintiff's case on the grounds that the trial court believed there was no evidence from which it could calculate the amount of damages? And I would submit that's just a misapplication of the law right there. And the court said if there were damages. The trial court didn't decide that there were damages or there were not damages, even though there was substantial evidence that the car was worth a lot less. So the trial court never reached a decision on the merits. It just said you didn't establish a prima facie case because there's no evidence from which I can calculate damages, and that's error as a matter of law. And on the admission of the opinion and testimony about $2,000 as is fair market value at the time of sale, that would be an abuse of discretion because the trial court allowed the same witness to testify to his fair market value of the car at the time of sale as represented and allowed the same witness to testify in his opinion that the fair market value of the car as is was less than $15,000, his opinion of the as represented value, but then said he's not allowed to testify to his opinion of the value of $2,000 as is because that would be a forensic opinion. And as I understand the arguments by the defense here, they seem to be arguing the trial court abused his discretion by admitting the opinion and testimony of the value of $13,000 as represented and the value that it was less than $13,000 as is. I would submit that would be not grounds for affirming the trial court decision. And they seem to be arguing that the trial court erred by not granting the motion for summary judgment, which is not an issue before the court. So I would submit that it's clear the trial court erred in ruling that judgment should be granted because the trial court believed that there was no evidence from which you could calculate the amount of damages when the law is if damages are established, the court can make reasonable inferences and there was plenty of information to make reasonable inferences as to an amount of damages which could have been calculated. See, my time is almost up. Thank you. No questions. Thank you. I appreciate your arguments. We consider the briefs to take the matter under advisement and issue a decision in due course. Thank you.